**Dr. Murray KLAUBER, Plaintiff,**

v.

**CITY OF SARASOTA, Florida Community Redevelopment Agency, and David R. Sollenberger, in his official capacity as City Manager, Defendants.**

**No. 8:00–CV–2475–T–17MAP.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 18, 2002.

1264

---

***ORDER***

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Defendants' Dispositive Motion for Summary Judgment and Memorandum of Law in support thereof (Dkt.Nos.15–16); Dr. Klauber's Memorandum in Opposition to Defendants' Motion/Memorandum for Summary Judgment (Dkt. No. 25); and Defendants' Reply to Plaintiff's Memorandum in opposition to Motion/Memorandum for Summary Judgment (Dkt. No. 34).

**Background**

In August of 1998, Plaintiff, Dr. Murray Klauber (Plaintiff), approached the Defendant, City of Sarasota (Defendant Sarasota), regarding a redevelopment project that he conceived for downtown Sarasota, which he called "Ringling Park One." This redevelopment project was to include twenty-two acres, encompassing seven and a half downtown city blocks and containing one hundred and eighty-five platted lots within. Defendant, City of Sarasota Community Redevelopment Agency (Defendant CRA), is an entity that was created in accordance with the Community Redevelopment Act of 1969, Florida Statutes, Chapter 163, Part III. Section 163.357(1)(a) of the act authorizes the Sarasota City Commissioners to constitute the membership of the CRA.

At Plaintiff's request, the CRA scheduled a meeting on November 16, 1998 to allow Plaintiff to present his proposal regarding Ringling Park One. Six days prior to the scheduled date for this meeting, the City Commission cancelled the CRA meeting because the Commissioners were shown Plaintiff's overall plan prior to the meeting. Because of their concerns about the size and cost of the park, as well as the concerns of the citizens of the City of Sarasota, the City Commission directed Plaintiff to show his plans for Ringling Park One to the community, through presentations to citizens' groups, to determine whether the community would support his proposal. The City Commission also decided that the City's staff should not spend any more time on the project until the community showed sufficient interest in the project and the City Commission formally declared its interest in a public-private partnership with Plaintiff regarding the development of Ringling Park One.

Following the City Commission's suggestion, Plaintiff presented his Ringling Park One proposal to various community groups. After presenting his proposal to various groups, Plaintiff's attorney appeared before the City Commission on July 6, 1999, asking the City Commission to schedule a meeting of the CRA to discuss Plaintiff's proposal and to allow Plaintiff's representatives to meet with the City Finance Department and the City Planning and Engineering Department. The City Commission granted Plaintiff's attorney's requests and scheduled a CRA meeting for September 14, 1999. At this meeting, Plaintiff submitted his redevelopment proposal. Plaintiff asserts that the CRA decided not to proceed with his proposal at this point and claims that the City Commission made its decision prior to the meeting on the grounds that Plaintiff was "litigious." Defendants claim that, after the City Commission aired their concerns about the City's liability in financing the project and their concerns that the project was "too imposing in scope and scale," Plaintiff withdrew his proposal.

In October 1999, City Manager, Defendant David R. Sollenberger (Defendant Sollenberger), began meeting with the Wynnton Group (Wynnton), a local developer. During these meetings, Wynnton proposed to purchase the city-owned eastern portion of Block 12 to construct a parking garage that would contain both public and private parking spaces. After building the parking garage, Wynnton proposed to reconvey the public spaces back to the City and to use the private parking spaces as off-site parking for an office building that it was planning to build nearby. Additionally, Wynnton proposed to relocate the Sarasota County Area Transportation (SCAT) bus facility from the city-owned portion of Block 12 to another parcel that Wynnton owned, known as the "House of Golf" site. This proposal required Sarasota County to consent to the relocation of the bus station and to purchase the House of Golf site from Wynnton.

On January 21, 2000, Plaintiff and his architect met with Defendant Sollenberger to discuss Plaintiff's second redevelopment project (Ringling Park Two). This project was to include the western portion of Block 12 that Plaintiff owned, as well as the city-owned eastern portion of Block 12 on which Wynnton proposed to build its parking structure. Plaintiff's Ringling Park Two project consisted of a four-level parking structure and office space. Plaintiff claims that, at this meeting, Defendant Sollenberger informed Plaintiff that his plans were premature because of a project in which the City was involved with Andres Duany that would constitute a new comprehensive development plan, updating the 1986 Redevelopment Plan. Additionally, Plaintiff claims that Defendant Sollen-

berger failed to notify Plaintiff of his allegedly "secret" meetings with Wynnton.

The CRA held a meeting on February 14, 2000, which was not conducted as a public hearing, to hear a presentation from Wynnton, regarding the proposed parking structure and office building. According to Defendants, the purpose of the meeting was to allow Wynnton to receive feedback from the CRA as to its level of interest in Wynnton's development project. At this meeting, the CRA voted three to two in support of Wynnton's proposal and authorized the City's staff to continue negotiations with the parties.

On March 1, 1000, Plaintiff's counsel hand delivered a letter to the CRA, in which he objected to the CRA's actions at the February 14th meeting. The City Commission discussed the letter and suspended negotiations with Wynnton until Wynnton obtained approval from the City Parking Body for off-site parking in connection with the proposed office building. Because Wynnton never filed an application with the City to obtain approval for off-site parking, the City never acquired jurisdiction to formally approve or disapprove any aspect of the proposal.

Plaintiff filed suit against Defendant Sarasota in state court on April 28, 2000, seeking to enjoin the City's plan to implement the Wynnton proposal. Subsequent to the state lawsuit, Plaintiff filed a claim in this Court under Title 42, United States Code, Section 1983 (Section 1983), alleging that Defendants deprived him of his rights to procedural due process and to equal protection under the law. Defendants now move for summary judgment on the grounds that Plaintiff cannot identify what protected interest of which Defendants deprived him; that he was given all the process that he was due under state law; that he has failed to present evidence of discrimination; and that he has failed to establish that Defendants' actions were not rationally related to a legitimate government objective. In response, Plaintiff asserts that he also "may" have a claim for retaliation under the First Amendment, to which Defendants reply that Plaintiff's claim was never pled in his complaint and that there is no legally-cognizable cause of action for third-party retaliation that Plaintiff attempts to assert in his response.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983).

All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Natl. Bank of Mt. Pleasant*, 595 F.2d 994, 996–997 (5th Cir.1979).

The court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.*

## Discussion

### I. Procedural Due Process Claim

Defendants assert that Plaintiff's Complaint contains a procedural due process claim under Section 1983. They contend that summary judgment should be granted in their favor because Plaintiff has failed to identify a liberty interest or property interest of which he was deprived and because he was provided all of the process that he was due under state law. In his response to Defendants' motion, Plaintiff fails to address Defendants' attack on his due process claim. After considering Plaintiff's failure to respond and Plaintiff's Complaint, as a whole, the Court finds that Plaintiff did not assert a claim for due process in his Section 1983 claim, and Defendants' motion must be denied as moot as to this claim.

### II. Equal Protection Claim

Defendants move for summary judgment on Plaintiff's Equal Protection claim on the grounds that Plaintiff has failed to establish either that he was deprived of a fundamental right or that the City's means of discrimination against him was not rationally related to a legitimate government objective. Plaintiff responds that, because his proposal was treated differently than other similarly-situated proposals and because the City's actions were not rationally reacted to its legitimate objective, issues of material fact exist and Defendants' motion must be denied.

Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." As the Supreme Court of the United States has pointed out, the Equal Protection Clause "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). If dissimilarly situated people are treated differently, there is no equal protection violation. *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir.1987). If there is no suspect or quasi-suspect class and no fundamental right is involved, the state may intentionally discriminate, as long as its means are rationally related to a government purpose. *Cleburne*, 473 U.S. at 439, 105 S.Ct. 3249.

Because Plaintiff is not in a suspect or quasi-suspect class and no fundamental right is involved, Plaintiff must show that he was treated differently than others similarly situated. *Strickland*, 830 F.2d at 1109. After he makes this showing, Plaintiff must then prove that Defendants intentionally discriminated against him and that they had no rational basis for doing so. To prevent plaintiffs from turning all "misapplications of state law into equal protection claims," arbitrary actions without intentional discrimination do not violate the Equal Protection Clause. *Id.* at 1114.

The Court finds that there are disputed issues of material fact as to whether Plaintiff was treated differently than others that were similarly situated. However, for the purposes of this Order, the Court will assume that Plaintiff was treated differently than others that were similarly situated. As such, the Court must now determine

whether Defendants intentionally discriminated against Plaintiff or if the reasons that they did were rationally related to a legitimate government objective.

■■■■ Purposeful discrimination can be shown by circumstantial evidence. *Id.* at 1114 n. 9. "For example, purposeful discrimination can be indirectly proven by a 'stark' pattern of adverse impact on a particular group." *Id.* Although Plaintiff makes numerous allegations that the Commissioners allegedly labeled Plaintiff as "litigious," and that the Commissioners denied Plaintiff's proposal to punish him for seeking an injunction in state court, Plaintiff has failed to provide this Court with any factual proof in support of these allegations. *See Villas of Lake Jackson, Ltd. v. Leon County,* 884 F.Supp. 1544, 1578 (N.D.Fla.1995) ("[T]he circumstantial evidence of differing treatment should reveal a pattern of irrationality."). Moreover, even if Defendants did intentionally discriminate against Plaintiff and his proposal, the evidence that the parties have submitted to this Court show that Defendants denied Plaintiff's proposal based on the City Commission's legitimate concerns, such as the size and scope of Plaintiff's proposal, the underlying liability of the City to pay for such a large development, and the concerns of citizens in the community, among others.

Because the Court finds that Defendants did not intentionally discriminate against Plaintiff and because the actions that Defendants did take were rationally related to legitimate government objectives, Defendants' motion must be granted as to Plaintiff's Equal Protection claim.

## III. First Amendment Claim

In his response to Defendants' motion, Plaintiff claims that he "may" have a First Amendment right for retaliation because he exercised his right to be "litigious." Defendants move for summary judgment on this issue, arguing that Plaintiff failed to plead this claim in his Complaint and that there is no legally-cognizable cause of action for the retaliation that Plaintiff attempts to allege.

To assert a Section 1983 claim, the specific constitutional deprivation must be identified. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Here, Plaintiff claims that he "may" have a claim for a violation of his First Amendment rights, but he did not raise this alleged issue until his response to Defendants' motion for summary judgment. Even then, Plaintiff was not confident that he was actually alleging that cause of action. Specifically, Plaintiff claims that Defendants retaliated against him in violation of his First Amendment rights because the City Attorney informed the City Commission that Plaintiff was "litigious," and, thereafter, the City Commission would not allow him to present his redevelopment plan or take his proposal under consideration.

■■■■ The Federal Rules of Civil Procedure are clear in their requirements that a pleading must contain "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests; that "each averment shall be simple, concise, and direct;" and that "[e]ach averment of a claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth." Fed.R.Civ.P. 8, 10. "To comply with fair notice, a complaint should at least allege in general terms the acts, customs, practices, policies of the Defendant in a manner sufficient to allow an informed response." *Desai v. Tire Kingdom, Inc.,* 944 F.Supp. 876, 879 (M.D.Fla.1996) (citing *Cummings v. Palm*

*Beach County,* 642 F.Supp. 248, 249 (S.D.Fla.1986)).

Here, Plaintiff sets forth only one count in his Complaint that alleges a Section 1983 claim for violations of his constitutional rights. In reading Count I, the Court presumes that the constitutional violation of which Plaintiff is complaining stems from his rights under the Equal Protection Clause of the Fourteenth Amendment, although this is not entirely clear to the Court. Now, in his response to Defendants' motion, Plaintiff tries to allude to the *possibility* that his Complaint may contain the existence of a violation of his First Amendment rights. It is neither Defendants', nor this Court's, duty to play hide-and-seek with claims that Plaintiff claims might be hidden somewhere within Plaintiff's Complaint.

Not only has Plaintiff failed to set forth a short and plain statement of his First Amendment retaliation claim that will give Defendants fair notice of what his claim is and the grounds upon which it rests, but he has also failed to establish this claim as a separate count, as required under Rule 10 of the Federal Rules of Civil Procedure. A First Amendment retaliation claim under Section 1983 is an entirely different claim than an Equal Protection claim under Section 1983. Section 1983 provides a mechanism for an alleged deprivation of a Plaintiff's constitutional or federal statutory rights by persons acting under color of law; however, Section 1983 cannot stand alone without an underlying constitutional violation because it, alone, does not carry any substantive rights. Therefore, each constitutional violation under Section 1983 establishes a different cause of action. Two claims brought under Section 1983 are not the same claim merely because the enforcement mechanism of the claims is the same statute. As such, the Court finds that Plaintiff failed to plead a cause of action for a violation of his First Amend-

ment rights, and Defendants' motion must be granted as to this issue. Accordingly, it is

**ORDERED** that on Defendants' Dispositive Motion for Summary Judgment (Dkt. No. 15) be **DENIED** in part as moot and **GRANTED** in part. The Clerk of Court is directed to enter final judgment in favor of Defendants and to close this case.